**NO COPY OF THIS TRANSCRIPT MAY BE MADE PRIOR TO 5/4/25


UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| UNITED STATES OF AMERICA | No. 1:23-cr-00112-PB-AJ-1 |
| v. | January 31, 2025 |
| CHARLES GLENN, Defendant. | 1:37 p.m. |

TRANSCRIPT OF STATUS CONFERENCE
HELD VIA VIDEOCONFERENCE
BEFORE THE HONORABLE PAUL J. BARBADORO

APPEARANCES:

For the Government: Sheila Sawyer, AUSA
United Attorney's Office (Maine)

For the Defendant: Mark W. Shea, Esq.
Shea & LaRocque LLP

Court Reporter: Brenda K. Hancock, RMR, CRR
Official Court Reporter
United States District Court
55 Pleasant Street
Concord, NH 03301
(603) 225-1454

P R O C E E D I N G S

THE CLERK: Good afternoon, your Honor.

We're here in the matter of The United States of America versus Charles Glenn, 23-cr-112-01-PB, for a status conference.

THE COURT: So, the Marshals Service has informed me that Mr. Glenn does not intend to appear at the hearing on Monday.

Let me ask you, Mr. Shea, do you have any additional information that you can provide me about that?

MR. SHEA: No, Judge. I'm sorry. I wish I could. Mr. Glenn hung up on me, I don't know, sometime shortly before I filed the motion to withdraw, and I haven't had any contact with him since. I waited a little time before filing the motion to withdraw in hopes that we would have some communication, but I haven't.

THE COURT: Ms. Sawyer, do you have any information for me about this?

MS. SAWYER: Only what I shared with the Clerk, your Honor, shortly before this hearing. I spoke with one of the marshals yesterday about their willingness to use force to extricate Mr. Glenn from his cell for purposes of the transport, and I received an email a short while ago from an attorney at the New Hampshire Attorney General's Office indicating that they would not authorize or permit the use of

force within the prison walls for that purpose, and so -- that's all I know, your Honor.

THE COURT: Okay. Well, I mean, we're so far away from the idea of using force, I don't know why anyone would even speculate about that issue. It would be a last resort. It would be only after I have exhausted every other alternative. It would be pursuant to my order, not any unilateral action by any Executive Branch agency.

But I do have to say, though, to make sure that people understand my view of my jurisdiction, I have a pending criminal charge on this defendant, I have the ability to take him into custody on that charge, and I don't believe I lack the power to do it, and I believe that the State of New Hampshire would have every obligation to comply with a lawful federal court order to transfer custody of an inmate. But I'm not going to do that. Why even speculate?

To the extent you suggest that the State has the authority to disregard an order from a Federal District Judge regarding transfer of an inmate who is subject to a federal charge, I just don't -- I can't imagine the Attorney General's Office would take that position, and, if so, I would want to get legal briefing on why they think they have the authority to do that. I have the power to writ him into federal custody, and I have the power to have that order executed. If you don't think I do, you should tell me why. Otherwise -- of course I'm

not going to do that, but I don't like any insinuation that the Court lacks the power to do this, either by you or by the New Hampshire Attorney General's Office.

MS. SAWYER: Yes, your Honor. And just by point of clarification, I was not suggesting that they use force or that your Honor order the use of force. In fact, to the contrary. What the marshal told me yesterday is that most often when a defendant is told that force could be used it results in the defendant complying voluntarily, and so my understanding is that's the only reason that they engaged in this discussion.

And as for whether New Hampshire has the ability to do anything, I certainly would defer to your Honor. I think if you were to issue a Court order, that it would be enforceable.

So, I just wanted to clarify that I was not seeking the use of force in this case.

THE COURT: We're so far away from that.

MS. SAWYER: Yes.

THE COURT: Cell extraction is very risky for a defendant; it's risky for the officers that you want to conduct the cell extraction. I respect State authorities and would want to consult with them, but that would be so many steps down the line that I don't believe we have any need to explore now. I just don't, by my silence, want to suggest for a minute that, oh, well, the State could keep him forever and we can't really ever have any rights over him. That's just not my

understanding of what the Supremacy Clause requires in relationships between the state and federal governments. So I just don't want, by my silence, to leave anyone with the impression that I think that that is a correct analysis of the legal issues involved, which I would want to have fully briefed by others, including the Attorney General's Office, before I did anything. But we're not going to need to get there. We'll figure out some other way to address these problems. Okay. So, I understand that.

I have received a communication from the Marshals office that suggested to me that the defendant has, when asked why he would not appear, he said that his mental health, his stress levels and unspecified health issues would cause him to not want to appear, and that's essentially -- also that he said to the people that -- this is being relayed from State Prison officials to the marshal -- that he said he did not want to move this process along, he had no interest in moving this process along. So, those are the things that I have heard, that have come to me, reported to the Marshals Service, who reported to me of communications that someone in the Marshals Service had with someone at the State Prison who had a communication with the defendant. So, that's what I know.

So, the question is how to proceed, which is an interesting problem, and, of course, I am mindful of Rule 43 of the *Rules of Criminal Procedure*, and I'm mindful of the case

law regarding a defendant's right to be present at important stages of a judicial proceeding. I think at the last conference I had with you by video I referenced First Circuit case law addressing the ability of the Court to hold a conference on a scheduling issue and discovery matters without the defendant's presence, and so I'm mindful of that case law as well; and I'm holding this hearing by video with you without the defendant present because I believe it's necessary as a scheduling matter because we have a hearing scheduled for Monday that the defendant has told us he is not planning to attend. So, I feel I need to at least consult with counsel about that matter, and I know of no other way to do it with the defendant's presence, since he has indicated he doesn't want to appear, so that's why I'm holding this conference now.

So, one thought occurs to me, and that is the principal purpose for the hearing was to assess whether there has been such a significant breakdown in the relationship between counsel and his client that requires the appointment of a new attorney, so that status of counsel hearing I traditionally do in court, not because it's required that I hold a hearing with the defendant present, but because I find it convenient for me to really get to the bottom of what's going on. I don't believe a hearing is constitutionally required, and I think I could resolve an issue like this on the papers. Of course, I'd want to give defense counsel and his

client an opportunity to submit any papers on an *ex parte* basis that they would like to present to me, but my thought is, if the defendant doesn't want to come to a hearing, we probably don't need to do a hearing; we could probably have Mr. Shea make a written submission and to solicit a submission from his client, if he wants to, if the client wants to make one, that could be made *ex parte*, and then I would review the *ex parte* submissions much in the manner in which I review a face-to-face discussion with a defendant and his lawyer and determine whether counsel should be discharged or not.

So, that was the first thing I wanted to explore with you. Wouldn't that be a way of appropriately addressing the status of counsel issue? And then, if I determine new counsel would have to be appointed, then I would simply appoint new counsel. If I determine that current counsel can remain, the next issue on my plate is the defendant's motion for access to tape-recorded communications between himself and his attorney, a specific subset of communications that were not provided to the United States, they were instead obtained by the defendant through some means, and the defendant contends those communications are privileged, and he's reviewed them with his attorney, but he contends he needs to have access to them himself while at the prison. There are problems with that that the government has identified, and there's a motion to allow him that access. I think that motion may be fully briefed up,

but, if it isn't, I'd be willing to allow parties to make other written submissions. I don't think I need a hearing on that one either; I could resolve that on the papers as well.

And that would, then, leave us with the motion to suppress as the other motion. That motion strikes me as one that, since I'm going to be taking evidence, it would be important to have the defendant there.

So, rather than push this into some kind of a confrontation, I think I can make some progress by ruling on the motion for status of counsel hearing and to replace counsel on the papers, allowing for another written submission, ruling on the motion for access to the tapes on the papers, allowing for another written submission, and then, hopefully, the defendant would understand the importance of attending his suppression hearing, and, if he didn't, then we would have to discuss the issue of an effective waiver. If I decide issues that don't require evidence on the papers, there's no hearing and therefore no waiver of presence, I could then deal with this waiver of presence issue, if it arises, at the motion to suppress.

So, that's a sketch of a plan of action that would get us a little bit further down the road. Maybe it would just postpone an inevitable confrontation, but I certainly believe in dealing with this in a careful, incremental way where it's possible to do so.

So, let me ask first the government and then Mr. Shea. How do you react to that proposal?

MS. SAWYER: I think that proposal makes a lot of sense, your Honor. I understand that, as the government's lawyer, I don't really have a dog in this fight in terms of the motion to withdraw. I do have concerns about whether the defendant is trying to unnecessarily delay the prosecution of his case by seeking to replace Attorney Shea, who I think, for the record, has done a great job for his client, so --

THE COURT: Don't say that, because then defendants think that you really want him to be in the case. Defendants actually like it more when the U.S. Attorney's Office hates their lawyer. That's my experience.

But, in any event, I know what you mean, and I understand your view, and I think it's already been sort of represented to me. The real issue here is hearing from Mr. Shea and his client on an *ex parte* basis to the extent they feel they have had a full opportunity to make me aware of the issue.

I will note your client did make a handwritten *ex parte* filing, and that filing does touch on this issue. Mr. Shea, have you been given a copy of that? I don't know whether he copied you on it or not.

MR. SHEA: I'm not aware of it. Maybe it was copied and sent on to me by the Clerk's Office, but, as we sit here,

I'm not aware of it.

THE COURT: There's no reason why you shouldn't see it and every reason why you should, because it touches on an issue that could bear on this question, and so I'm going to ask the Clerk after this hearing to provide you with a copy of it so you can be informed.

So, I understand your concern, and I think that, if there is a conflict and new counsel is warranted, of course, the government has no basis to oppose that. On the other hand, the government certainly has a legitimate interest in making clear that speedy trial rights benefit both the defendant and the public, and no one should be able to unjustly thwart the interests of both the defendant and the public in a speedy trial. So, I'm mindful of that.

So, Mr. Shea, you're the important party on this matter. I've outlined a proposal to try to get us a couple of steps down the line. What do you make of it?

MR. SHEA: It sounds like a reasonable proposal, Judge. I guess what I would say is this: I'd break it into two. On the issue of counsel or withdrawal, I think the plan makes sense. I think it would be very helpful to hear from Mr. Glenn regarding this. Obviously, it's more difficult when he absents himself, but I'd want him be to be heard, so your proposal for an *ex parte* filing by him I think is a good idea.

As to the motion, the pending motion for his access to

the tapes, I'm not trying to delay things, but I think, because of the situation we are in, I would like to write to Mr. Glenn and inform him that you intend to perhaps rule on the papers on that particular motion and is there something that I missed that he wanted to add so that I make sure to cover that.

THE COURT: Now, let me suggest this: I can -- I think step one is I'll ask the court reporter to prepare a transcript of this hearing and make that available to you so that in your communication with Mr. Glenn you can provide him a copy of the hearing transcript so he knows exactly what has been said at this particular conference, and in that communication with him you can inform him that, The Judge intends to rule on the status of counsel issues on papers, so if there's anything you want to say about that -- say, The Judge is trying to accommodate your request not to be unnecessarily brought down from Berlin, and the way to do that with respect to this first matter is to have the matter decided on the papers, the Judge has expressed an interest in hearing anything else you may have to say on that particular issue, and he's agreed to allow you to make a written submission explaining the matter any further that you'd like to make, and it should be submitted by whatever deadline we agree on, and the Court will take that into account along with any filing I make and it will rule on that, and we intend to take it a step at a time. Understandably, if you're going to be discharged,

you don't want to make any representations about procedures that might follow your discharge, and so we'll have to revisit the second step if you stay on as his lawyer.

So, I'm fine with that. I think that you have a good point, and that accommodates your concern that until and unless the Court says you need to stay on you don't want to commit Mr. Glenn to anything about what happens after you're gone. I get that.

Does that work for you? I'll get you, step one, a transcript. You write to him, give him a copy of the transcript, tell him that he has an opportunity to make any written submission in addition to what's already been made on that issue of counsel, because you'll see the *ex parte* filing he made does make reference to some issues that arguably touch on it.

So, that's what I would propose. Does that work for you?

MR. SHEA: Yes. The only thing for me, and this is just philosophical, so I'll be quick with it, but, you know, when I move to withdraw as counsel, generally speaking, I like to say as little as possible, because, frankly, if a judge will accept "irretrievable breakdown in communications" I leave it at that, because I know that my client eventually is going to be at least either appearing before that judge for trial, or for sentencing, or perhaps for both, and I don't like to muddy

the waters for anybody, and I'm not saying it necessarily would, but I don't like to say anything negative about a client of mine.

THE COURT: You don't have to say more on that subject. I get it. I did criminal defense work, I represented lawyers who had problems with clients who were doing criminal defense work, and I try to be very careful about not demanding too much of lawyers when it comes to recusal, as in the first recusal of your predecessor. I let Mr. Glenn have a new lawyer, even though there was very little justification for it, in my view. But I hope that you will understand, and I don't know whether this case is that type of case yet, but there are some occasions where the problem will not be cured by the appointment of new counsel, the problem is the problem, and it won't be addressed by the appointment of subsequent counsel.

That there is a rift between you and Mr. Glenn is, by itself, not sufficient to justify the appointment of new counsel, even a very serious rift. If the rift would persist with respect to any attorney who could conceivably be appointed, then there is no purpose in engaging in an endless sequence of reappointments of counsel, and it's very time-consuming and undermines the interest of a speedy resolution of criminal cases, and it's very costly to the public who pays the fees here, because new lawyers have to get brought up to speed. So, I remain open to persuasion on this

issue; I've received submissions already, but part of the assessment is, for me, that there is a problem requires me to examine is it a problem that would be cured by the appointment of new counsel, or is the problem a structural problem, that the client has expectations that can't be fulfilled, and if that is the problem that doesn't generate an endless series of new counsel appointments, in my view.

So, we're both speaking at a philosophical level here, but that's how I see it. The ideal world is to find a lawyer who can work with the client and get it done, but there are some occasions where that just can't happen, and, if it can't, then I require counsel to remain part of the case, to represent the client zealously, to do what in the lawyer's judgment is in the best interests of the client, giving to the client decisional authority over matters where the client has decisional authority, consulting with the client on matters where the attorney has the decisional authority, and doing the best they can. That's all that I can do. And at that point a defendant has a choice to take the counsel that they've been appointed or to represent themselves.

As you and I know, self-representation is the worst of all possible choices, but that is a choice a defendant can make after being properly counseled by the Court as to what that means, but that's how, as we proceed down the decision tree, that's where we end up in cases where new counsel won't cure

the relational problem that exists. So, that's where I am.

If I thought you were at fault in the problem, and if I just gave him a good lawyer the problem would go away, then maybe that's the case, maybe you are at fault. I'll be open to hearing what your client says. But that you and he don't get along isn't enough for me for the reasons I've explained, and I tried to explain that to him the last time when I appointed new counsel, and we'll have to see what he says about this specific problem.

Okay. So, a step at a time. The hearing for Monday is canceled. I will ask a transcript to be prepared on an expedited basis of this call, because I think it's helpful for the defendant to know exactly what communications have been had with the Court, and you can tell him of his right to make a submission on the new counsel issue.

And I would ask you how much time after you get a transcript do you need to communicate with your client, to get a response from your client, to get the record filled on that counsel issue and allow me to decide that issue? Because I think that's the threshold step for me. I've got to rule on that issue before I can go on to the next step. So, how much time do you think you need once I get you a transcript of this proceeding?

MR. SHEA: Realistically, I would say two weeks. I'd like to tell you a week, but the mail isn't always what it used

to be.

THE COURT: Yeah. All right. So, that's fine. I get it. That puts us into mid-February.

Could I ask my Clerk to remind me what the current trial date is?

THE CLERK: This coming Tuesday, your Honor.

THE COURT: All right. So, there's a motion to continue that has been filed by the defense. If I remember correctly, it did not specify a precise date for the continuance, but it will at least have to be 30 days from the February trial date, so we'll at least have to move it into the March date. I think what I want to do here is proceed a month at a time, and so I'll move it into the March trial date. It sounds to me, realistically, like, if it takes two weeks to get this done, and then it takes another week or two to get the next motion done, and then I've got to do the suppression hearing, it's going to be really hard to get it into March, so maybe I need to do a 60-day continuance just to -- I hate granting these continuances, but I'm trying to be realistic here, Mr. Shea. Given the problem that has been injected into this case by the request for new counsel and your client's unwillingness to appear, I think realistically it's going to be impossible to get it done until April, the April trial period. What say you?

MR. SHEA: I agree.

THE COURT: Okay. How about you, Ms. Sawyer?

MS. SAWYER: I agree.

THE COURT: All right. So, let's schedule it up for the April trial period, and let's try to get everything done.

So, I will issue an order that -- Jen, you'll consult with my law clerk, and we'll work up a draft. It will be very short. It will just say -- it will include the ends of justice finding. The defendant has moved for a continuance, and, after consulting with parties, the defendant seeks a continuance until the April trial period, and I'll make the ends of justice finding and say we continue it to the April trial period.

And then also to that order say: The court reporter shall prepare a transcript of this conference on an expedited basis and provide a copy of the transcript to defense counsel; defense counsel shall forward the transcript to his client and inform his client that the client may make a supplemental *ex parte* submission on the issues addressed in the request for status of counsel hearing to the Court within two weeks of the date that the transcript is produced; that shall be filed *ex parte* with the Court; defense counsel may make a written submission on that issue as well by the same date; and that the Court will rule on the motion to replace counsel after receiving those submissions.

And then we'll schedule up another conference after that, and either there will be new counsel appointed or current

counsel will remain, and the next step will be to say do I need to receive anything more from people regarding the access to the calls, which has already been briefed.

And your client has made some supplemental statements about that in the *ex parte* filing he made with me, so it may be ready to be ruled on, and I can just go ahead and issue a written decision on that.

Then we'll try to get the suppression hearing done, and then we should be ready for trial. That's sort of where I am.

THE CLERK: Excuse me, Judge, if I may.

THE COURT: Yeah.

THE CLERK: Mr. Glenn -- and you referenced the *ex parte* filing he made recently with regards to counsel. I did receive a couple of days ago an additional *ex parte* filing from him.

THE COURT: Give them both just to defense counsel.

THE CLERK: Okay.

THE COURT: They address significantly issues about his relationship with counsel, and I don't think the government has any entitlement to that information. So, just give it to counsel, who should be aware of it, because he's still representing his client until and unless I exclude him from the case.

All right. Well, I'm sorry about this, but I think we

have to proceed carefully, incrementally, and I certainly want to avoid any kind of coercive practices on my part, if I can. I won't rule anything out, but my goal is to try to resolve this case expeditiously and fairly and to give the defendant every right to be present, but there are times when things become impossible to run the way we would like them to run, but, in my experience, the best way to deal with this is just a step at a time. So, hopefully this will get us through a couple of the proceedings.

And either you, Mr. Shea, or any new counsel I appoint can impress upon the defendant how important to him it will be to be able to attend that suppression hearing, to advise counsel on what reaction he has to testimony, to potentially testify, if the defendant wants to testify. That would be an important hearing where we would want the defendant to be present, and I couldn't excuse his presence without having him come down and be in person and do an inquiry to determine whether he was knowingly, voluntarily, intelligently and competently waiving his right to be present. So, to me at that point I need to get the defendant in court in front of me, even if he doesn't want to participate in the trial, because I couldn't conduct proceedings of that sort without him unless I was able to determine that he had waived his right or in some very unusual circumstances he has forfeited his right to be physically present. I don't want to get there. I want to

avoid it, if there's any human way to do it.

MR. SHEA: I do feel -- excuse me, Judge. I do feel the need to point out that, you know, Mr. Glenn is pointing to mental-health issues, to the marshals at least, in the communication that you relayed to us, and that my office, you know, when things broke down we were in the process of trying to hire an expert on this issue to visit with Mr. Glenn and to go through his -- and we're accumulating his historic record, meaning the records of his prior history on this issue. And I only interrupt, and I apologize for that, but bring this up in that that would certainly be another issue that would be relevant to whether he was in a position to waive his presence for such an important hearing.

THE COURT: Yeah. Well, again, step at a time, take the easiest path that I can consistent with being fair and complying with law, so I always take the path of least resistance, if that's the right path. Hopefully, we don't ever get there. But I agree with you that, at least theoretically, when you require a knowing, voluntary and intelligent waiver of an important right, like the right to be present, you have to have competence to be able to do that.

Now, you have raised mental health as a possible issue of defense, but you have not to this point raised a question of competence. I have not seen in my interactions with Mr. Glenn anything that would call his competence into question, but, if

that should arise as a concern, I may have to explore it. But the way that that is -- as you, I'm sure, know, the way that is traditionally done in federal court is he would be transferred down to a federal facility, probably at Butner, and he would spend 30 or 60 days there, and I would get a report from an examining psychologist who would opine on his competence. That is a significant step; and, especially if a defendant is telling me he doesn't want to leave his cell, we would have to confront the issue of how he would react to the idea of being transferred down to a federal facility in North or South Carolina. I can't remember where it is.

If somebody had a basis for me to question his competency, either the government or the defendant, you should let me know, because I have not seen it myself, and, if I did have a concern about it, then I would have to look at the issue of whether he should be writted out of state custody and transferred to a federal facility where his competence could be assessed, and that's the way it's done. I'm sure you've had clients where that issue has come up, and that's what happens, the judge issues an order. There's a statute on it, as you know.

But I just have not, I have not seen anything that calls his competence into question, but you have had more detailed interactions with him, and, if you have concerns about his competence, it would be incumbent upon you to raise it with

me and give me a basis, and then I'd assess it. But I'm not there yet. I think, as I said, a step at a time. People's ideas change. I've had inmates who have said, "I'm not coming to court; I'm not participating." I've had inmates who have come to court and they refuse to answer questions. You can usually find a way to work through things.

But he will have to be present for the suppression hearing and the trial. I don't know any other way around that, unless he were to refuse in such a way that I could determine that he was knowingly, voluntarily and intelligently waiving his rights, and I would certainly want to personally counsel him on why that would be such a bad thing for him to do, in every possible way it would be counterproductive for him, and I would need to make sure he understood all of that before he made a decision like that, and I could only make an assessment of whether he was able to understand that if he was in front of me.

MR. SHEA: And I understand that, Judge. I'm not raising the issue of competency right now, but I also, you know, hear him saying he's decompensating in what he's saying to the marshals, and he's not communicating with me, so I don't actually -- I'm not even in a position to do what I would normally do and the Court would normally expect.

THE COURT: Right. I understand, and hopefully this incremental approach will get us to where we need to get, and

I'll see how things develop. But we'll issue that order. We will continue the trial date until the April trial period, and we'll see how far down the line we get.

To me, the extreme circumstance is I, hopefully, don't have to confront, which is a defendant who doesn't want to come to court, even if that means giving up his right to be present during an important proceeding. That's so bad for him. I wouldn't want to put him in that situation if there's a way to avoid it, and I certainly would not want to have to use force to bring him to court, and those kinds of options are last resorts with me.

Okay. Anything else from you, Ms. Sawyer?

MS. SAWYER: No, your Honor. Thank you.

THE COURT: Anything else from you, Mr. Shea?

MR. SHEA: No. Thank you, your Honor.

THE COURT: All right. So, Jen, just work with my law clerk and just draft that short order, and send me up a draft of it when you've got it done, and I'll issue that.

But the parties can count on the trial date being continued until the April trial period. Let's all work to try to get this done and stick with that April date. It's a very short trial, and I really think it's in everybody's interests to get this concluded, if at all possible.

Okay. Anything else, Jen?

THE CLERK: Yeah. Attorney Shea also filed a motion

to extend time to submit the previous *ex parte* filing he was --

THE COURT: Oh. We're going to have to stay that --

THE CLERK: Okay.

THE COURT: -- as well. I'll set a new date after we resolve the counsel issue. So, the motion is granted. The Court will set a new date.

If there's any doubt about this, Mr. Shea, why am I even asking for that, it's because I thought it would help me fairly resolve your client's request for access to those tapes. That was, like, I was trying to figure out, well, maybe he has some reason that he can't share with me as to why it's so important for him to have those, and that would be the opportunity for doing that. I'm not asking to know anything about the defense strategy that I don't need to know to rule on the defendant's own motion. If he doesn't want to tell me anything about that, that's fine. I'll just rule on the motion with what I've got. So, that's the purpose of it, but I'll set a new date for that, if necessary, after we resolve the counsel issue.

MR. SHEA: Okay. Understood. Thank you.

THE COURT: All right. Thank you.

All right. Thank you. That concludes the proceedings.

(WHEREUPON, the proceedings adjourned at 2:20 p.m.)

C E R T I F I C A T E

I, Brenda K. Hancock, RMR, CRR and Official Court Reporter of the United States District Court, do hereby certify that the foregoing transcript constitutes, to the best of my knowledge, skill, ability and belief, a true and accurate transcription of the within proceedings.

Date: ___2/3/25__________

*/s/ Brenda K. Hancock*
Brenda K. Hancock, RMR, CRR
Official Court Reporter